FILED - USDC - FLMD - JAX
JUL 14 2026 PM3:48

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. Case No. 3:26-cr- 140-MMH-LLL
18 U.S.C. § 1349

ALBERT DUANE CHESTER II

# INFORMATION

The United States Attorney charges:

## COUNT ONE

### A. Introduction

At all times material to this Information:

1. Medicare was a federally funded health care benefit program that provided medical coverage for persons age 65 and over and for persons under age 65 who were disabled.

2. Medicaid was a health care program funded by both the federal government and the State of Florida that provided medical coverage for certain low-income individuals.

3. Medicare and Medicaid were each a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f).

4. Medicare and Medicaid were each a "health care benefit program" as defined in 18 U.S.C. § 24(b).

5. Medicare was divided into four parts: A, B, C, and D. Part D provided supplementary medical insurance benefits that covered the cost of many prescription drugs, but Medicare paid for such a drug only if it was prescribed for a medically accepted indication that facilitated the diagnosis or treatment of illness or injury or the improvement of the functioning of a malformed body member.

6. First Coast Community Development, Inc. ("FCCD"), was a corporation with its principal place of business in Jacksonville, in the Middle District of Florida. FCCD was licensed as a pharmacy by the State of Florida.

7. The defendant, ALBERT DUANE CHESTER II, was a pharmacist at FCCD.

B. Charge

Beginning in or about November 2023 and continuing through in or about July 2025, in the Middle District of Florida, and elsewhere, the defendant,

ALBERT DUANE CHESTER II,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the United States Attorney, to execute and attempt to execute a scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses, representations, and promises money and property owned by and under the custody and control of a health care benefit program, that is, Medicare and Medicaid, in violation of 18 U.S.C. § 1347.

### C. <u>Manner and Means</u>

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

1. In or about November 2023, FCCD entered into an agreement with a marketing company pursuant to which the company would refer persons to FCCD for the provision of HIV post-exposure prophylactic medications by FCCD.

2. The agreement provided that FCCD would pay the marketing company $200 for every person who was referred to FCCD for the provision of HIV medications but that FCCD would pay this amount only if a claim submitted on behalf of the person was paid by Medicare or Medicaid.

3. Representatives of the marketing company set up tents and tables in Jacksonville, generally in low-income areas, and offered to provide free, government-sponsored cell phones to anyone who stopped and agreed to provide their information.

4. As a result of the agreement with FCCD, while obtaining the personal information necessary for the person to receive the free cell phone, the marketing representatives also obtained health insurance information, including whether the person was covered by Medicare or Medicaid.

5. Pursuant to the agreement with FCCD, the marketing representatives were supposed to ask the person to answer questions from a medical questionnaire

but the representatives often filled in the answers to those questions themselves, without posing the questions to the person.

6. The information gathered by the marketing representatives was sent to FCCD, which used the information to generate prescriptions for HIV medications that were authorized by a nurse practitioner who had never seen, spoken with, or performed any manner of evaluation, examination, or test on the persons for whom the prescriptions were issued.

7. FCCD filled the prescriptions, submitted claims to Medicare or Medicaid for the medications, and was reimbursed approximately $4,000 per month for each person for whom a claim was paid.

8. The persons whose information was obtained by the marketing representatives believed that they were agreeing only to receive a free cell phone and did not request or agree to receive HIV medications.

9. For the period of November 2023 through July 2025, the actions of the defendant and his co-conspirators caused the submission of approximately 20,316 fraudulent claims, resulting in reimbursements from Medicare totaling approximately $11,681,479 and reimbursements from Medicaid totaling approximately $12,536,267. Accordingly, the total loss to these programs was approximately $24,217,746.

10. The defendant received a total of approximately $4,969,050 in proceeds as a result of his involvement in the offense.

All in violation of 18 U.S.C. § 1349.

## FORFEITURE

1. The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction of a conspiracy to violate 18 U.S.C. § 1347, in violation of 18 U.S.C. § 1349, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, the following:

a. an order of forfeiture for at least $4,969,050.00, which represents the proceeds the defendant obtained as a result of the offense;

b. $250,000.00 U.S. Currency, seized from the defendant on March 18, 2026;

c. $100,000.00 seized from EverBank, Account No. 3693660331, held in the name of Albert Chester;

d. $14,000.00 seized from the defendant on May 29, 2026;

e. Real property, including all improvements thereon and appurtenances thereto, located at 10122 Koster Street, Jacksonville, Florida 32256-5886, the legal description for which is:

Lot 170, EDISON PARCEL 6 - PHASE 3-4, a subdivision according to the plat thereof recorded in Plat Book 78, Pages 1 through 4, inclusive, of the Public Records of Duval County, Florida.

Parcel Identification Number: 167763-0885

Record Owner: Albert D. Chester II;

f. Real property, including all improvements thereon and appurtenances thereto, located at 5517 Tarsus Court, Jacksonville, Florida 32207-2668, the legal description for which is:

Lot 34 of OAK CREEK PRESERVE, according to the Plat thereof as recorded in Plat Book 83, Page(s) 45 through 49, of the Public Records of Duval County, Florida.

Parcel Identification Number: 134067-0285

Record Owner: Albert D. Chester II;

g. Real property, including all improvements thereon and appurtenances thereto, located at 334 East Ashley Street, Jacksonville, Florida 32202-2710, the legal description for which is:

Lot 35, Parks at the Cathedral, according to the map or plat thereof, as recorded in Plat Book 54, Pages(s) 33, 33A and 33B, of the Public Records of Duval County, Florida.

Parcel Identification Number: 073902-0086

Record Owner: Albert D. Chester, Trustee of DDQ Private Trust Dated June 25, 2025;

i. Real property of approximately 12 acres, including all improvements thereon and appurtenances thereto, located in Calhoun County, Florida, the legal description for which is:

Lot 27, Durham Woods Subdivision, according to the plat thereof, as recorded in Plat Book 3, Pages 19 through 23, inclusive, of the Public Records of Calhoun County, Florida.

Record Owner: Cherut Enterprises, Inc., a Florida Corporation; and

k. Real property, including all improvements thereon and appurtenances thereto, located at Palma Real Villas (Cocotal Golf and Country Club), Bavaro, Punta Cana, Higuey, La Altagracia, Apartment located on level 3 of Block A, with No. A-PH 301, in the project called Palmira Golf, the legal description for which is:

PLOT 67-B-470-REF-1-SUB-542, of the Cadastral District No.11.3, which has an area of 4,258.12 square meters, registration No. 1000002311, located in HIGUEY, LA ALTAGRACIA.

Apartment located on level 3 of Block A, with No. A-PH 301, in the project called "PALMIRA GOLF", with a total surface area of approximately 151.16 (m2) total square meters including balconies. The apartment is distributed as follows according to the attached floor plan: living room, dining room, balcony, picuzzi, kitchen; white goods (electric stove, oven, extractor, refrigerator), installation of split type air conditioners in the rooms and social area (living room and dining room), laundry area; three (3) bedrooms with closet, family room, three (3) bathrooms, with a construction area of 114.50 (m2), with a balcony area of 14.49 (m2), with a solarium area of 22.17 (m2) and two (2) parking spaces. This property is located on Palma Real Norte street of the Palma Real Villas, Cocotal Golf and Country tourist complex Club, Bavaro, Higuey, La Altagracia.

Record Owner: Albert Duane Chester, II

4. If any of the property described above, as a result of any act or omission of a defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

GREGORY W. KEHOE
United States Attorney

By: ______________________
ARNOLD B. CORSMEIER
Assistant United States Attorney

By: ______________________
For KARA WICK
Assistant United States Attorney
Chief, Health Care Fraud Section