AF Approval CJL

Chief Approval CFM

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED IN OPEN COURT
11/17/26
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

v. Case No. 3:26-cr-140-JEP-LLL

ALBERT DUANE CHESTER II

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, through the undersigned Assistant United States Attorney, and the defendant, ALBERT DUANE CHESTER II, and the attorneys for the defendant, Elizabeth L. White and Matthew R. Kachergus, mutually agree as follows:

## A. Particularized Terms

### 1. Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with conspiring to execute a scheme to fraudulently obtain Medicare and Medicaid reimbursements for HIV prophylactic medications in violation of 18 U.S.C. § 1347, all in violation of 18 U.S.C. § 1349.

### 2. Maximum Penalties

Count One is punishable by a term of imprisonment of not more than ten years, a fine of not more $250,000 or twice the gross gain or twice the gross loss from the offense, whichever is greater, or both a term of imprisonment and a fine, a

term of supervised release of not more than three years to follow any term of imprisonment, and a special assessment of $100, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than two years of additional imprisonment as well as the possibility of an additional term of supervised release. The defendant also is subject to an order of restitution and an order of forfeiture, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

(1) two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit health care fraud, as charged in the Information; and

(2) the defendant knew the unlawful purpose of the plan and willfully joined in it.

4. Waiver of Indictment

The defendant will waive the right to be charged by way of indictment before a federal grand jury.

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with

committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. Acceptance of Responsibility

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant



Defendant's Initials ______

agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. Restitution

Pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A(a)(3), the defendant agrees to make restitution, jointly with other convicted conspirators, to Medicare for losses totaling approximately $11,681,479 and to Medicaid for losses totaling approximately $12,536,267. However, the defendant acknowledges that any restitution ordered by the Court in this criminal case is not binding on the United States or the State of Florida for purposes of determining any civil or administrative liability, including additional amounts that may be owed for fraudulently obtained Medicare and Medicaid payments, which liability may be greater than the amount of restitution ordered by the Court. The defendant further acknowledges and agrees that this agreement and any judgment, order, release, or satisfaction issued in connection with this agreement will not satisfy, settle, or compromise the defendant's obligation to pay any civil or administrative liability owed to the United States or the State of Florida for which such liability may be lawfully imposed.

8. Cooperation – Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other



Defendant's Initials ______

matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.



Defendant's Initials ______

9. Use of Information – Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10. Cooperation – Responsibilities of Parties

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:



Defendant's Initials ______

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.



Defendant's Initials AO

(3) The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4) The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5) The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

11. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(7), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: the $4,969,050 in proceeds the



Defendant's Initials AC

defendant admits he obtained as a result of the commission of the offense to which the defendant is pleading guilty, as well as the following

1. $250,000.00 U.S. Currency, seized from the defendant on March 18, 2026;

2. $100,000.00 seized from EverBank, Account No. 3693660331, held in the name of Albert Chester;

3. $14,000.00 seized from the defendant on May 29, 2026;

4. Real property, including all improvements thereon and appurtenances thereto, located at 10122 Koster Street, Jacksonville, Florida 32256-5886, the legal description for which is:

   Lot 170, EDISON PARCEL 6 - PHASE 3-4, a subdivision according to the plat thereof recorded in Plat Book 78, Pages 1 through 4, inclusive, of the Public Records of Duval County, Florida;

5. Approximately $506,162.77 in lieu of real property, including all improvements thereon and appurtenances thereto, located at 5517 Tarsus Court, Jacksonville, Florida 32207-2668;

6. Approximately $216,700.65 in lieu of real property, including all improvements thereon and appurtenances thereto, located at 334 East Ashley Street, Jacksonville, Florida 32202-2710;

7. Real property of approximately 12 acres, including all improvements thereon and appurtenances thereto, located in Calhoun County, Florida, the legal description for which is:

   Lot 27, Durham Woods Subdivision, according to the plat thereof, as recorded in Plat Book 3, Pages 19 through 23, inclusive, of the Public Records of Calhoun County, Florida;

8. Real property, including all improvements thereon and appurtenances thereto, located at 4408 Grey Heron Lane, Orange Park, Florida 32065, the legal description for which is:



Defendant's Initials AC

Lot 269 of EAGLE LANDING AT OAKLEAF PLANTATION PHASE THREE, according to the Plat thereof as recorded in Plat Book 50, Page(s) 15 through 36, of the Public Records of Clay County, Florida;

9. 2019 White Porshe Cayenne E Hybrid 4D SUV
VIN: WP1AE2AY6KDA50188;

10. 2025 Black Genesis GV80 Coupe
VIN: KMUJBESC4SU268464; and

11. The contents of LPL Financial (Cherut) Individual Retirement Account number 1960-4473,

which assets constitute proceeds of the health care fraud. The net proceeds from the forfeiture and sale of any specific asset(s) will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that: (1) the defendant obtained $4,969,050 as a result of the commission of the offense, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense of conviction, and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount



Defendant's Initials ______

of proceeds obtained from commission of the offense and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant expressly consents to the forfeiture of the following substitute assets:

1. The contents of LPL Financial (Wal-Mart) Individual Retirement Account number 4810-7877; and

ADC MRK EW

2. ~~The contents of LPL Financial (Walgreens) Individual Retirement Account number 5137-0926.~~

The defendant agrees that forfeiture of the substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these substitute assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and



Defendant's Initials ______

procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, include that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior



Defendant's Initials ________

to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the

abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied. On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The



Defendant's Initials ________

special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.



Defendant's Initials ______

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that the financial statement and disclosures will be complete, accurate and truthful and will include all assets in which defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit



Defendant's Initials ________

reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to



Defendant's Initials ______

appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.



Defendant's Initials ______

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for



Defendant's Initials ______

perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.



Defendant's Initials ______

AF Approval CJL Chief Approval CFM

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 17th day of November, 2026.

GREGORY W. KEHOE
United States Attorney

ALBERT DUANE CHESTER II
Defendant

ARNOLD B. CORSMEIER
Assistant United States Attorney

ELIZABETH L. WHITE
MATTHEW R. KACHERGUS
Attorneys for Defendant

For CHRISTOPHER F. MURRAY
Assistant United States Attorney
Criminal Chief, South

AF Approval CJL Chief Approval CFM

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. Case No. 3:26-cr-140-JEP-LLL

ALBERT DUANE CHESTER II

PERSONALIZATION OF ELEMENTS

1. Do you admit that during the period of November 2023 through June 2025 you and at least one other person in some way agreed to try to accomplish a shared and unlawful plan to commit health care fraud, as alleged in the Information?

2. Do you admit that you knew the unlawful purpose of the plan and willfully joined in it?

Defendant's Initials ______

AF Approval CJL

Chief Approval CFM

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:26-cr-140-JEP-LLL

ALBERT DUANE CHESTER II

FACTUAL BASIS

In November 2023, First Coast Community Development ("FCCD") entered into an agreement with a marketing company pursuant to which the company would refer persons to FCCD for the provision of HIV post-exposure prophylactic medications by FCCD. FCCD was licensed as a pharmacy and an HIV testing clinic by the State of Florida. The defendant, ALBERT DUANE CHESTER II, was a pharmacist at FCCD. HIV post-exposure prophylactic medications are medicines that must be taken very soon after a possible exposure to HIV to prevent the virus from taking hold in the body.

The agreement provided that FCCD would pay the marketing company $200 for every person who was referred to FCCD for the provision of HIV medications but that FCCD would pay this amount only if a claim submitted on behalf of the person was paid by Medicare or Medicaid. Payments to marketers of a set amount based on whether a claim is paid are illegal kickbacks under federal law.

Defendant's Initials ______

The marketing representatives set up tents and tables in Jacksonville, generally in low-income areas and usually near store fronts, and offered to provide free, government-sponsored cell phones to anyone who stopped and agreed to provide their personal information to obtain the phones. As a result of the agreement with FCCD, while obtaining the personal information necessary for the person to receive the free cell phone, the marketing representatives also obtained health insurance information, including whether the person was covered by Medicare or Medicaid. The vast majority of persons who were signed up by the marketing representatives believed that they were agreeing only to receive a free cell phone and did not request or agree to receive HIV medications.

Beginning in or about September 2024, the marketing representatives were supposed to ask people they encountered to answer questions from a medical questionnaire. However, the representatives often filled in the answers to those questions themselves, without posing the questions to the person. One purpose of the representatives' doing so was to ensure that none of the answers would disqualify the person from receiving the HIV medications. The representatives had a financial incentive for ensuring that the person was not disqualified from receiving the medications because they were paid for signing someone up for the medications only if a claim submitted on behalf of the person was paid by Medicare or Medicaid.

The information gathered by the marketing representatives was sent to FCCD, which used the information to generate prescriptions for HIV medications that were

authorized by a nurse practitioner. The nurse practitioner had never seen, spoken with, or performed any manner of evaluation, examination, or test on the persons for whom the prescriptions were issued, a fact of which the defendant was aware. Accordingly, the medications could not have been, and were not, prescribed for any medically accepted indication that facilitated the diagnosis or treatment of an illness, which is a requirement of Medicare for the cost of a prescription to be reimbursed. FCCD filled the prescriptions, submitted claims to Medicare or Medicaid for the medications, and was reimbursed approximately $4,000 per month for each person for whom a claim was paid.

MRK

During the investigation, law enforcement agents interviewed numerous persons who had received HIV medications from FCCD without their request or consent. For some of these persons, taking the medications could have seriously endangered their health, given pre-existing medical conditions from which they suffered.

On April 23, 2025, agents interviewed Person 1, a Medicare beneficiary who resided in Jacksonville. Person 1 related that several months before the interview he had approached a tent offering free cell phones that had been set up next to a grocery store near his residence. He said that he had filled out the paperwork to obtain a free phone and that the paperwork was related only to the phone. He stated that he was not asked any medical questions, did not fill out any medical questionnaire, and was not given any physical examination or test at the time that he completed the paperwork. Shortly after signing up for the free phone, he received a package that

contained a few bottles of HIV-related medications. He said that he was surprised when the package arrived because he had no need for the medications and had not discussed HIV or HIV medications with anyone. He stated that he was not sexually active and had not been for a long time and that he did not engage in the use of illegal drugs. He said that he had never heard of or had any interaction with the nurse practitioner who wrote a prescription in his name for the HIV medications. He stated that he brought the package of HIV medications with him to his next cardiologist appointment to ask his doctor about it. His doctor told him that he should not take the medications and that doing so could be "life threatening" in light of his medical conditions. A review of Medicare claims data revealed that FCCD submitted eleven claims between February 14, 2024, and December 4, 2024, for medications prescribed to Person 1, resulting in payments to FCCD totaling approximately $21,013.

On April 8, 2025, agents interviewed Person 2, a Medicare beneficiary who resided in Jacksonville. Person 2 related that about a month before the interview he had received a free cell phone from someone who had set up a tent in front of a local business. The person in the tent was advertising that they were giving out free government cell phones, and that all they needed was identification and a Social Security Number. He said that at the time he received the cell phone he was not asked any medical questions, did not fill out any medical questionnaire, and was not given any physical examination or test. He stated that he had never heard of FCCD,

had never received any services from FCCD, and had never visited its physical location. He said that he had never heard of or had any interaction with the nurse practitioner who wrote a prescription in his name for HIV medications. He said that he had never received any HIV medications and that he did not engage in any manner of high-risk sexual activity. A review of Medicare claims data revealed that FCCD submitted three claims dated March 10, 2025, for medications prescribed to Person 2, resulting in payments to FCCD totaling approximately $4,312.

For the period of November 2023 through July 2025, the actions of the defendant and his co-conspirators caused the submission of approximately 20,316 fraudulent claims to Medicare and Medicaid, resulting in reimbursements from Medicare totaling approximately $11,681,479 and reimbursements from Medicaid totaling approximately $12,536,267. Accordingly, the total loss to these programs was approximately $24,217,746. From this amount, the defendant received a total of approximately $4,969,050 in proceeds.

The defendant admits the following assets constitute, or were purchased with, fraud proceeds: (1) $250,000.00 U.S. Currency, seized from the defendant on March 18, 2026; (2) $100,000.00 seized from EverBank, Account No. 3693660331, held in the name of Albert Chester; (3) $14,000.00 seized from the defendant on May 29, 2026; (4) real property, including all improvements thereon and appurtenances thereto, located at 10122 Koster Street, Jacksonville, Florida 32256-5886; (5) approximately $506,162.77 in lieu of real property, including all

improvements thereon and appurtenances thereto, located at 5517 Tarsus Court, Jacksonville, Florida 32207-2668; (6) approximately $216,700.65 in lieu of real property, including all improvements thereon and appurtenances thereto, located at 334 East Ashley Street, Jacksonville, Florida 32202-2710; (7) real property of approximately 12 acres, including all improvements thereon and appurtenances thereto, located in Calhoun County; (8) real property, including all improvements thereon and appurtenances thereto, located at 4408 Grey Heron Lane, Orange Park, Florida 32065; (9) 2019 White Porshe Cayenne E Hybrid 4D SUV VIN: WP1AE2AY6KDA50188; (10) 2025 Black Genesis GV80 Coupe VIN: KMUJBESC4SU268464; and (11) the contents of LPL Financial (Cherut) Individual Retirement Account number 1960-4473.